UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY WEAVER,

        Plaintiff,                                 Hon. Ellen S. Carmody

v.

                                              Case No. 1:14-cv-141

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On April 29, 2014, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #9). Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age on his alleged disability onset date. (Tr. 46, 126, 195). He successfully completed high school and worked previously as a bricklayer, supervisor, and construction worker. (Tr. 24). Plaintiff applied for benefits on December 1, 2010, alleging that he had been disabled since April 15, 2010,[1] due to obesity, shortness of breath, and knee/back impairments. (Tr. 46, 126-27, 152, 195). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 73-124). On July 23, 2012, Plaintiff appeared before ALJ James Prothro with testimony being presented by Plaintiff and a vocational expert. (Tr. 30-72). In a written decision dated September 21, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 14-25). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

---

[1] Plaintiff initially alleged that he was disabled as of January 7, 2008, but subsequently amended his disability onset date to April 15, 2010, on the ground that such was "the date on which [he] believes he became physically unable to do even sedentary work with a sit/stand option." (Tr. 46, 126, 195).

## RELEVANT MEDICAL HISTORY

On November 5, 2010, Plaintiff was examined by Dr. R. Scott Lazzara. (Tr. 214-20). Plaintiff reported that he was disabled due to "knees, back, stroke, shortness of breath, obesity." (Tr. 216). Plaintiff reported that he injured his left knee several years previously after which he experienced "gradual deterioration" thereof. (Tr. 216). Plaintiff reported that he "is able to do chores around the house and drive...does some light cooking but does not grocery shop." (Tr. 216). Plaintiff reported that "he can walk about 80 yards, sit about 30 minutes, stand about 10 minutes, and can still lift upwards of 100 pounds." (Tr. 216). A physical examination revealed the following:

> APPEARANCE/MENTAL STATUS: The patient is cooperative in answering questions and following commands. The patient's immediate, recent and remote memory is intact with normal concentration. The patient's insight and judgment are both appropriate. The patient provides a good effort during the examination.
>
> VITAL SIGNS: Weight = 570 lbs.   Height = 68" (without shoes.)
>
> SKIN: Normal.
>
> EYES/EARS: Visual acuity right eye = 20/30, left eye = 20/20, without corrective lenses. Pupils are equal, round, and reactive to light. The patient can hear conversational speech without limitation or aids.
>
> NECK: The neck is supple without masses.
>
> CHEST: There is diminished air entry. Breath sounds are clear to auscultation and symmetrical. There is no accessory muscle use.
>
> HEART: Heart sounds are distant. There is regular rate and rhythm without enlargement. There is a normal S1 and S2.
>
> ABDOMEN: The abdomen is obese. There is no organomegaly or masses. Bowel sounds are normal.

> VASCULAR: No clubbing or cyanosis is present. There is 2+ non pitting edema appreciated. The posterior tibial pulses are absent. Hair growth is present on the lower extremities. The feet are warm and normal color.
>
> MUSCULOSKELETAL: There is no evidence of joint laxity or effusion. There is crepitance over the left patellar joint. Grip strength remains intact. Dexterity is unimpaired. The patient could button clothing and open a door. The patient had mild difficulty getting in and out of a chair, mild difficulty heel and toe walking, moderate difficulty squatting 30 degrees, and was unable to hop. Straight leg raising is negative. There is no paravertebral muscle spasm.
>
> NEURO: Cranial nerves are intact. Motor strength and tone are normal. Sensory is intact to light touch and pinprick. Romberg testing is negative. The patient walks with a mild left limp and wide based antalgic gait without the use of an assist device.

(Tr. 217-19). The doctor concluded that Plaintiff suffered from morbid obesity and further noted the following:

> 1. Morbid obesity.
>
> This appears to be his most significant ailment. He does complain of some left knee pain and did have some crepitance over the anterior aspect of the left knee. He did have moderate difficulty doing a partial squat. He was not able to hop due to his weight. He does walk with a mild left limp and an antalgic gait but remains relatively stable. He did have diminished range of motion in multiple joints due to his body habitus. He did have significant lower extremity edema and findings of restrictive lung disease. Spirometry may be of benefit but he did not appear dyspneic today. His endurance does appear mildly impaired. At this point, he would benefit from extensive weight reduction. He is not a surgical candidate at this point due to his size and risks. He states he had a cerebral vascular accident but I did not find any residual deficits today. His blood pressure was not obtainable due to his size.

(Tr. 220).

> On May 31, 2012, Plaintiff was examined by Physicians Assistant John Kehl. (Tr.

245-49).  Plaintiff reported that he was experiencing "decreased exercise tolerance" and "difficulty breathing on exertion."  (Tr. 246).  Plaintiff also reported experiencing "back pain, back ache, decreased range of motion, joint pain, joint stiffness, muscle pain, muscle weakness, myalgia, physical disability and swelling of extremities."  (Tr. 246).  Plaintiff exhibited abnormal posture and a "wider than normal" gait with "decreased" speed and step length.  (Tr. 247).  An examination of Plaintiff's left knee revealed decreased range of motion and pain with palpation.  (Tr. 247).  Plaintiff was prescribed Lortab[2] and Lisinopril.[3]  (Tr. 247).

On July 6, 2012, Physicians Assistant Kehl and Dr. Joseph Roth reported the following regarding Plaintiff's functional capacity.  (Tr. 254-55).  Plaintiff can frequently lift/carry 10 pounds and occasionally lift/carry lesser weight.  (Tr. 254).  During an 8-hour workday, Plaintiff can stand and walk less than two hours and sit "about" two hours.  (Tr. 254).  Plaintiff would need to "lie down" more than 50% of the time during an 8-hour workday.  (Tr. 254).  Plaintiff can only rarely twist and climb stairs and can never stoop, crouch, or climb ladders.  (Tr. 255).

Physicians Assistant Kehl also provided a sworn statement to Plaintiff's attorney.  (Tr. 256-59).  Kehl reported that Plaintiff was experiencing "degenerative changes in his low back and his knees" which " causes him to not be able to stand for any period of time."  (Tr. 256).  Kehl also reported that Plaintiff was experiencing "generalized osteoarthritis" primarily in his knees and possibly in his hips, ankles, and back.  (Tr. 257).  Kehl further speculated that Plaintiff was experiencing "some spinal stenosis and that would certainly explain the numbness in his legs."  (Tr.

---

[2] Lortab contains a combination of acetaminophen and hydrocodone and "is used to relieve moderate to severe pain."  See Lortab, available at http://www.drugs.com/lortab.html (last visited on March 4, 2015).

[3] Lisinopril is an ACE inhibitor and "is used to treat high blood pressure (hypertension), congestive heart failure, and to improve survival after a heart attack."  See Lisinopril, available at http://www.drugs.com/lisinopril.html (last visited on March 4, 2015).

258).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the

---

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) morbid obesity; (2) low back pain; (3) knee pain; and (4) left lower extremity discomfort with numbness at times, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[5] subject to the following limitations: (1) he can lift/carry 10 pounds frequently and 20 pounds occasionally; (2) during an 8-hour workday with normal breaks, Plaintiff can stand for two hours, walk for 1-2 hours, and sit for 6 hours; (3) he can occasionally climb ramps and stairs; (4) he can never climb ladders, ropes, or scaffolds; (5) he can occasionally balance and stoop, but can never kneel; (6) he can occasionally crouch, but can never crawl; and (7) he should avoid concentrated exposure to cold, heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazardous machinery. (Tr. 19).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert at the administrative hearing.

The vocational expert testified that there existed approximately 8,900 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 63-64). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.      **Dr. Roth's Opinion**

As noted above, Dr. Roth (along with Physicians Assistant Kehl) reported that Plaintiff's ability to function was significantly more impaired than the ALJ recognized. Plaintiff argues that he is entitled to relief because the ALJ failed to afford controlling weight to Dr. Roth's opinion. The ALJ afforded "very little weight" to Dr. Roth's opinion on the ground that the doctor "apparently never met with the claimant personally." (Tr. 23). There is nothing in the scant record

9

to suggest that Dr. Roth ever actually examined Plaintiff. The ALJ's observation that Dr. Roth never actually examined Plaintiff is supported by substantial evidence. Thus, Dr. Roth's opinion was not entitled to any deference. *See Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506-07 (6th Cir. 2006). Accordingly, this argument is rejected.

**II.        Plaintiff's Credibility**

At the administrative hearing, Plaintiff testified that he experiences far greater functional limitations than the ALJ recognized. (Tr. 37-63). Plaintiff also completed a function report indicating that he experiences far greater limitations than the ALJ recognized. (Tr. 157-64). It is well recognized that a claimant can be found disabled on the basis of his subjective allegations. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002). However, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Thus, where a claimant's subjective allegations are inconsistent with the ability to work, the ALJ must assess the claimant's credibility and determine the weight to be afforded to his allegations. *See Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

Given that the ALJ denied Plaintiff's claim, the ALJ obviously discounted Plaintiff's credibility and afforded little (if any) weight to Plaintiff's subjective allegations. However, the ALJ completely failed to address the subject of Plaintiff's credibility. The ALJ did not identify the weight he afforded to Plaintiff's subjective allegations and, more importantly, the ALJ offered absolutely no insight into his apparent decision to so significantly discount Plaintiff's credibility. This failure

constitutes reversible error. *See, e.g., Cunningham v. Astrue*, 360 Fed. Appx. 606, 613 (6th Cir., Jan. 5, 2010) ("an ALJ's decision to discount a claimant's credibility must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

### III.       The ALJ's RFC Determination

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also, Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 116 (6th Cir., Nov. 18, 2010). Plaintiff argues that the ALJ's RFC fails to sufficiently account for his impairments and limitations.

While the record contains precious little medical evidence, it more than supports the conclusion that Plaintiff requires a sit/stand option. Physician's Assistant Kehl and Dr. Roth both concluded as much. (Tr. 254-59). This conclusion is also supported by the consultive examination performed by Dr. Lazzara on which the ALJ placed such great reliance. (Tr. 21, 214-20). Accordingly, the Court finds that the ALJ's RFC determination is not supported by substantial evidence.

### IV.       Remand is Appropriate

The ALJ's conclusion that Plaintiff is not disabled was based on the vocational

11

expert's testimony that if limited to the extent reflected by the ALJ's RFC determination, there exist a significant number of jobs which Plaintiff could nevertheless perform. As discussed above, however, the ALJ's RFC is not supported by substantial evidence and because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

The record fails to establish that Plaintiff is entitled, at this juncture, to an award of benefits. There does not exist overwhelming evidence that Plaintiff is disabled. Moreover, while there exists evidence that Plaintiff is more limited than recognized by the ALJ, the record contains evidence supporting the contrary conclusion. Simply put, evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. Accordingly, the Commissioner's decision is reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.  A judgment consistent with this opinion will enter.


Date:  March 10, 2015  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge